**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARYLAND CASUALTY COMPANY, | **1:10-cv-02242-OWW-JLT** |
| **Plaintiff,** | **MEMORANDUM DECISION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 45)** |
| **v.** | |
| OLGA GONZALEZ, et al., | |
| **Defendants.** | |

## I. <u>INTRODUCTION</u>.

Maryland Casualty Company ("Plaintiff") proceeds with an action for declaratory relief pursuant to 28 U.S.C. § 2201 et seq. On April 25, 2011, Plaintiff filed a motion for summary judgement. (Doc. 45).  Defendants Kyle Koetsier, Daniel Reyna, and Emmerson Valdivieso filed opposition to Plaintiff's motion on May 23, 2011. (Doc. 50).

## II. <u>FACTUAL BACKGROUND</u>.

Hector Gonzalez is an owner of G & Company, a business which sells Kirby Vacuum cleaners directly to consumers by sending sales teams door-to-door.   Plaintiff issued a commercial general liability insurance policy to "Olga and Hector Gonzalez DBA: G & Co." effective April 19, 2009 ("Policy"). Section I.(2)(g) of the Policy's Commercial General Liability Coverage Form provides:

**1**

1

> This insurance does not apply to... "Bodily Injury" or
> "property damage" arising out of the ownership,
> maintenance, use, or entrustment to others of
> any..."auto"...owned or operated by or rented or loaned
> to any insured.

(Manapol Decl., Ex. W, Doc. 53 at 48.).

On April 27, 2009, Defendants were passengers in a van owned by G & Company that was involved in a collision with another vehicle. At the time of the accident, Gabriel Pascual ("Pascual"), an independent contractor hired by G & Company as a "Crew Leader," was driving the van.  Defendants were ejected from the van and sustained serious injuries.

On or about April 16, 2010, Defendants filed a lawsuit in the Fresno County Superior Court naming, among others, Pascual, Hector Gonzalez and "G & Company Enterprises" as defendants ("Reyna Action").  The complaint filed in the Reyna Action ("Reyna Complaint") provides: "this action arises out of a collision by a motor vehicle against a passenger van." (Plaintiff's RJN, Ex. A, Doc. 18).  The Reyna Complaint alleges that, at the time of the accident, Pascual and Defendants were "acting within the course and scope of their employment as Dealers for Defendants G & Company [and] [Hector] Gonzales." (Id. at 6).  The Reyna Complaint alleges that Pascual consumed alcohol prior to operating the van on April 27, 2009, and that Pascual was driving on a suspended license.

The Reyna Complaint asserts negligence against Pascual, G & Company, and Hector Gonzalez.  The theory of recovery as to G & Company and Hector Gonzalez is that Pascual was negligently hired and retained.  Specifically, the Reyna Complaint asserts that G & Company knew or should have known that Pascual had been convicted

**2**

of driving under the influence, had a history of drinking alcohol while driving Company-owned vehicles, and had no valid driver's license.

The fourth cause of action asserted in the Reyna Complaint is negligent maintenance of a motor vehicle.   The Reyna Complaint alleges that Hector Gonzales and G & Company maintained the van in a dangerous condition because it lacked properly functioning tires and seatbelts.   The fifth cause of action is for negligent entrustment of a motor vehicle.

G & Company has tendered defense of the Reyna Action to its automobile insurance provider; that insurer is defending the pending State court action.

### III. **LEGAL STANDARD**.

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v.*

**3**

*Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  With respect to an issue as to which the non moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A non movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).  "[A] non movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." Id. (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

///

///

///

**4**

**IV. DISCUSSION**.

**A. Plaintiff's Duty to Defend**

An insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement; this duty is separate from and broader than the insurer's duty to indemnify. *E.g., Waller v. Truck Ins. Exchange, Inc*., 11 Cal. 4th 1, 19 (Cal. 1995). Although broad, the duty to defend is not unlimited; "it is measured by the nature and kinds of risks covered by the policy." *Id*.

Doubt as to whether the facts establish the existence of an insurer's duty to defend must be resolved in the insured's favor. *E.g., Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 300 (Cal. 1993). In order to prevail on the issue of the duty to defend, the insurer must satisfy a heavier burden than the insured:

> When the issue is whether an insurance company has a duty to defend its insured in an action by a third party, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot."

*Shanahan v. State Farm General Ins. Co*., 193 Cal. App. 4th 780, 785 (Cal. Ct. App. 2011) (citing *Montrose*). Basic coverage provisions are construed broadly in favor of affording protection to the insured, while clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer. *E.g., Minkler v. Safeco Ins. Co. of America*, 49 Cal. 4th 315, 322 (Cal. 2010).

Well-settled rules of contract interpretation govern interpretation of an insurance agreement. *E.g., E.M.M.I. Inc. v.*

**5**

*Zurich American Ins. Co.*, 32 Cal. 4th 465, 470 (Cal. 2004).  As with any contract, the mutual intention of the parties at the time the insurance policy is entered into controls interpretation of the policy's provisions. *Id*. (citing Cal. Civ. Code § 1636).  Unless the parties attributed special meaning to the terms of an insurance policy, the "clear and explicit" meaning of the policy's provisions, interpreted in their "ordinary and popular sense," are dispositive.  *Id*.

## 1.   Applicability of the "Auto Exception"

The Policy contains a provision which excludes coverage for "'bodily injury' or 'property damage" arising out of the ownership, maintenance, use or entrustment to others of any...'auto'...owned or operated by...any insured" ("Auto Exception").   The phrase "arising out of" is broad, and is ordinarily understood to mean "incident to, or having connection with."  *Hartford Accident & Indem. Co. v. Civil Service Employees Insurance Co.*, 33 Cal. App. 3d 26, 32 (Cal. Ct. App. 1973); *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 100-101 (Cal. 1973) (phrase "arising out of the use" of a vehicle encompasses injuries "bearing almost any causal relation with the vehicle").   As the California Court of Appeal explained in State *Farm Mut. Auto. Ins. Co. v. Partridge*:

> Past California cases have established beyond contention that this language of "arising out of the use," when utilized in a coverage or insuring clause of an insurance policy, has broad and comprehensive application, and affords coverage for injuries bearing almost any causal relation with the vehicle... Although our cases have not yet defined with absolute precision the requisite causal connection necessary to invoke such a coverage clause, we have no doubt that in the instant case the role played by the use of the car   constituting a substantial, and indeed, a proximate cause of the accident    was certainly sufficient to bring the present accident within the coverage of the automobile policy.

10 Cal. 3d 94, 100-101 (Cal. 1973) (citations and footnotes omitted).

Defendants cannot seriously dispute that the Reyna Action "arises out" of "ownership, maintenance, use, or entrustment to others" of a vehicle owned by an insured within the meaning of the Policy.[1]  *See id*.  Instead, Defendants contend that the "concurrent cause doctrine" creates the possibility of coverage under the Policy notwithstanding the Auto Exception.  In essence, Defendants contend that the Reyna Action *also* arises out of G & Company's negligent hiring and retention of Pascual, and that such negligence constitutes an independent concurrent cause of Defendants' injuries.  *See Partridge*, 10 Cal. 3d at 106 (holding that coverage existed for accident that occurred in automobile notwithstanding automobile exclusion in homeowner's insurance policy where negligent act separate from use of automobile was a concurrent independent cause of the accident).

### 2. California's Concurrent Cause Doctrine

California's concurrent cause doctrine originates from the California Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94 (Cal. 1973).  *Partridge* involved "an instance of what can only be described as blatant recklessness:"

---

[1] The parties dispute the extent to which Defendants are bound by legal contentions advanced in Defendants' motion to strike.  Defendants previously conceded the applicability of the auto exception to the Reyna Action in their motion to strike, but now contend this issue is in dispute.  It is unnecessary to determine whether Defendants are bound by their prior contentions under the doctrine of judicial admissions because the applicability of the auto exception is clear.

7

> Wayne Partridge...filed the trigger mechanism of his pistol to lighten the trigger pull so that the gun would have "hair trigger action"; the trial court specifically found this modification of the gun to be a negligent act, creating an exceptionally dangerous weapon...
>
> Partridge and two friends, Vanida Neilson and Ray Albertson, were driving in the countryside in Partridge's four wheel drive Ford Bronco. With Vanida sitting between them in the front seat, Partridge and Albertson hunted jackrabbits by shooting out of the windows of the moving vehicle; Partridge was using his modified .357 Magnum. On the occasion in question here, Partridge spotted a running jackrabbit crossing the road, and, in order to keep the rabbit within the car's headlights, Partridge drove his vehicle off the paved road onto the adjacent rough terrain. The vehicle hit a bump, the pistol discharged and a bullet entered Vanida's left arm and penetrated down to her spinal cord, resulting in paralysis.

*Id.* at 97-98.   In holding that the tortfeasor's homeowners insurance provided coverage for the victim's injuries notwithstanding an express provision excluding coverage for injuries "arising out of the use of any motor vehicle," the California Supreme Court reasoned:

> although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. Under these facts the damages to Vanida are, under the language of the homeowner's coverage clause, "sums which the Insured . . . [became] legally obligated to pay" because of the negligent filing of the trigger mechanism; inasmuch as the liability of the insured arises from his non auto related conduct, and *exists independently of any "use" of his car*, we believe the homeowner's policy covers that liability.
>
> A hypothetical may serve to explain further our conclusion in this regard. If, after negligently modifying the gun, Partridge had lent it to a friend who had then driven his own insured car negligently, resulting in the firing of the gun and injuring of a passenger, both Partridge and his friend under traditional joint tortfeasor principles would be liable for the injury. In such circumstances, Partridge's personal liability would surely be covered by his homeowner's policy, and his friend's liability would be covered by automobile insurance. When viewed from this

1
2
3
4

> perspective, it can be seen that State Farm is presently attempting to escape liability under the homeowner's policy simply because, in the instant case, both negligent acts happened to have been committed by a single tortfeasor. In our view, this coincidence cannot defeat the insurer's obligation to indemnify the insured for liability arising from *non-automobile risks*.

5
6
7
8

*Id.* at 103 (emphasis added). *Partridge* has spawned a diverse body of case law concerning the applicability and scope of the concurrent cause doctrine.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The concurrent cause doctrine applies where two or more "independent negligent acts concur to produce one injury." *Allstate Ins. Co. v. Jones*, 139 Cal. App. 3d 271, 275, 277 (Cal. Ct. App. 1983). Separate negligent acts are "independent" of each other within the meaning of the concurrent cause doctrine where the risks created by each negligent act do not depend on the same instrumentality of injury. *See Partridge*, 10 Cal. 3d at 105 (negligent filing of trigger mechanism held independent of negligent driving because filing of trigger was sufficient in and of itself to establish liability for injury resulting from accidental discharge of gun); *see also Underwriters Ins. Co. v. Purdie*, 145 Cal. App. 3d 57, 70-71 (Cal. Ct. App. 1983) (negligent hiring and retention of employee with a propensity for violence held independent of negligent use of firearm by employee because risk of injury entailed by negligent hiring and retention did not depend on use of the firearm); *Jones*, 139 Cal. App. 3d at 277 (negligent loading of rebar onto truck not independent from negligent use of the truck because risk created by negligent loading was contingent on use of the truck); *compare Glens Falls Ins. Co. v. Rich*, 49 Cal. App. 3d 390, 397-98 (Cal. Ct. App. 1975)

**9**

(negligent placing of loaded weapon in hazardous position held to be concurrent cause independent of negligent use of automobile because use of automobile was incidental to the risk entailed by negligent handling of the weapon) *with State Farm Fire & Cas. Co. v. Camara*, 63 Cal. App. 3d 48, 54-55 (Cal. Ct. App. 1976) ("In contrast to *Partridge*...and *Glens Falls*, the injury in the instant case did not involve an instrumentality other than and separate from the vehicle itself...In other words, the only way in which plaintiff could have been exposed to the claimed design risk was through the operation or use of the [excluded instrumentality])."

In applying the concurrent cause doctrine, the threshold inquiry is whether there is an insured concurrent independent cause of the occurrence causing damage. *See, e.g., Camara*, 63 Cal. App. 3d. at 53-54 (undertaking analysis of issue by first determining whether alleged concurrent cause was an insured risk); *see also Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 835 (Cal. Ct. App. 2006) (rejecting application of concurrent cause doctrine because no covered risk gave rise to occurrence underlying law suit).  This inquiry is guided by familiar tort law principles. *E.g.*, *State of California v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1030 (Cal. Ct. App. 2009).[2]

> While coverage under both first and third party insurance
> is a matter of contract, the contractual scope of third
> party liability insurance coverage, as reflected in the

---

[2]  The California Supreme Court has repeatedly noted a critical distinction between the causation analysis applicable to first-party property insurance claims and the causation analysis applicable to liability insurance claims involving injured third parties. *See, e.g., Garvey v. State Farm Fire & Casualty Co.*, 48 Cal. 3d 395, 406 (Cal. 1989); *see also State of California v. Allstate Ins. Co.*, 45 Cal. 4th at 1030.  First party property loss claims, unlike third party liability claims, do not entail an assessment of tort liability. *Garvey*, 48 Cal. at 406.

1  policy language, depends on the tort law source of the
2  insured's liability.

3  Under *Partridge*, then, we look to whether a covered act
   or event subjected the insured to liability for the
4  disputed property damage or injury under the law of
   torts. We ask, in the standard insuring language used
5  here, whether the disputed amounts are "sums which the
   Insured    [became]  obligated to pay    for damages "
6  ...that is not excluded under the policy. If the
   insured's nonexcluded negligence "suffices, *in itself*, to
7  render him fully liable for the resulting injuries" or
   property damage (*id*. at p. 103), the insurer is obligated
8  to indemnify the policyholder even if other, excluded
   causes contributed to the injury or property damage.

9
*California v. Allstate Ins. Co.*, 45 Cal. 4th at 1030 (citations
10
omitted, emphasis added).    If all concurrent causes of the
11
underlying occurrence are risks expressly excluded by the insurance
12
policy, no coverage exits. *See, e.g., Camara*, 63 Cal. App. 3d at
13
53-54 (determining that no coverage existed because alleged
14
concurrent cause was an excluded risk under the policy); *accord*
15
*Safeco Ins. Co. v. Gilstrap*, 141 Cal. App. 3d 524, 530 (Cal. Ct.
16
App. 1983)("when the events giving rise to the insured's liability
17
are solely and indivisibly related to the use of an excluded
18
instrumentality, coverage is precluded").[3]
19
     **3. Negligent Hiring as a Concurrent Cause**
20
     Under California law, negligent hiring is a theory of direct
21

22  ─────────────
[3] Neither party has addressed the potentially dispositive issue of whether
23  Pascual was an "insured" within the meaning of the Policy at the time of the
    accident.    Pursuant to the terms of the Policy, an "employee" is also an
24  "insured," and the Policy defines "employee" broadly.  Because the Policy's auto
    exception applies to *any* vehicle operated by an "insured," to the extent Pascual
25  was an "employee," any bodily injury or property damage arising out of Pascual's
    use of an automobile would be expressly excluded from coverage; under such
26  circumstances, there would be no insured risk on which to base application of the
    concurrent cause doctrine. *See, e.g., Camara*, 63 Cal. App. 3d at 53-54.  Drawing
27  all inferences in favor of the non-moving party, the court assumes that Pascual
    was not an insured, and that the risk of Pascual causing a vehicular accident
28  while driving an "auto" other than one "owned or operated by or rented or loaned
    to any insured" is an insured risk.

liability distinct from vicarious liability. *E.g., Phillips v. TLC Plumbing, Inc*., 172 Cal. App. 4th 1133, 1139 (Cal. Ct. App. 2009); *Fernelius v. Pierce*, 22 Cal. 2d 226, 233 (Cal. 1943).   As the California Court of Appeal explained in *Phillips*:

> The principal may be negligent because he has reason to know that the agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor. An agent may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity...Liability results not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment.

172 Cal. App. 4th at 1140 (citations to Restatement Second of Agency omitted).   Negligent hiring and retention of an agent may constitute the proximate cause of injuries caused by the agent, *Fernelius*, 22 Cal. 2d at 233-34, but only where a sufficient nexus or causal connection exists between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by the third party, *Phillips*, 172 Cal. App. 4th at 1139.

Three published California Court of Appeal's cases address negligent hiring as a concurrent independent cause of injury in the third party insurance liability context.   In *Underwriters Ins. Co. v. Purdie,* a deliveryman sued a liquor store for negligent employment after a store employee shot the deliveryman during an argument.   The store's insurance policy excluded from coverage

**12**

"liability arising out of bodily injury or property damage...caused by, or occurring from any use maintenance or possession of a fire arm by insured or its agent or employee." *Purdie*, 145 Cal. App. 3d at 61.  In holding coverage existed for the deliveryman's negligent employment claim notwithstanding the policy's firearm exclusion, the California Court of Appeal reasoned:

> [U]se of the firearm in the instant case, like the use of the automobile in *Partridge*, was a mere contributing cause. "That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act." 10 Cal.3d at p. 105.
>
> Underwriters relies on decisions which hold the automobile exclusion in the homeowner's policy precludes coverage because  the insured's act giving rise to liability was dependent upon and related to insured's use of an automobile and thus, Partridge was not applicable. *See, e.g., State Farm Fire & Cas. Co. v. Camara* 63 Cal.App.3d 48, 53-54 (1976); *National Indemnity Co. v. Farmers Home Mutual Ins. Co.* 95 Cal.App.3d 102, 108-109 (1979); *Allstate Insurance Co. v. Jones,* 139 Cal.App.3d 271, 278 (1983); *Safeco Insurance Co. v. Gilstrap* 141 Cal.App.3d 524, 533 (1983). However, we find that these cases are distinguishable from the instant case.
>
> The facts in *Camara*, *National Indemnity*, *Jones*, and *Gilstrap*, were solely and indivisibly related to the use of the excluded instrumentality. In  *Camara*, the automobile was negligently redesigned and rebuilt into a dune buggy. The negligent supervision of the child during her exit from (unloading) the automobile was involved in *National Indemnity*. *Gilstrap* involved the negligent entrustment of a motorcycle. Finally, in *Jones*, the negligence involved the improperly loaded rebar on the truck.
>
> Here, in contrast, the negligent hiring or retention of Antoine is not indivisibly related to the use of a firearm. We conclude, therefore, that appellants correctly contend that the liability insurance policy provides coverage for their alleged injuries. It is unnecessary to reach the other contentions.

*Purdie*, 145 Cal. App. 3d at 70-71.

In *Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135 (Cal. Ct. App. 1983), issued approximately one month after

publication of *Purdie*, the California Court of Appeal rejected negligent hiring as a concurrent independent cause in a case concerning theft by a self-storage facility's employee.[4]   The insurance policy at issue in *Atlas* excluded coverage for "liability arising from any dishonest or criminal act of the insured or their employees or agents."   146 Cal. App. 3d at 142.   The insured alleged coverage based on the concurrent cause doctrine, arguing that negligent hiring of an employee with a propensity to steal was a concurrent insured risk.   *Atlas* rejected the insured's argument:

> until [the employee] exercised his alleged propensity as a thief, no liability against [the employer] arose. No liability can arise from the claimed risk in negligently hiring a thief unless the thief actually steals something. It is the basing of liability specifically on the negligent hiring of a thief which renders [the employer's] alleged negligent act dependent upon the excluded theft as concurrent causes of the loss.

*Id*. at 148.

The California Court of Appeal rejected negligent hiring as a concurrent independent cause again in *Century Transit Systems, Inc. v. American Empire Surplus*, 42 Cal. App. 4th 121 (Cal. Ct. App. 1996).  *Century Transit* involved a cab driver's assault and battery of two individuals attempting to videotape a political demonstration by gay rights activists.  The cab company's insurance policy excluded, *inter alia*, "any claim, demand or suit based on assault and battery...whether or not committed by or at the direction of the insured."   In rejecting the insured's argument that the victim's negligent hiring claim provided the basis for coverage, the *Century Transit* Court expressly criticized *Purdie*:

---

[4] Discussion of *Purdie* is conspicuously absent from *Atlas*.

> We summarily reject Century's alternative argument that the negligent hiring of Silar was a concurrent cause of plaintiffs' injuries. Century's contention rests upon the case of *Underwriters Ins. Co. v. Purdie*..., which involved significantly different policy language, as well as a misapplication of the concurrent cause doctrine discussed by the Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Partridge*... In *Purdie*, the plaintiff was shot by the insured's employee. He was not injured by two independent acts of negligence, but rather only one (i.e., the employee's act in shooting him). As we read *Purdie*, the negligent hiring or retention theory asserted against the employer was not an independent cause of the injury but rather a theory for imposing liability on a third party for an excluded injury. Unless the employee fired the gun, the injury would not have occurred. Therefore, liability for negligent hiring was wholly dependent upon an injury caused by excluded event and was not a true "independent" cause of the plaintiff's injury. We agree with those cases which have criticized the concurrent cause analysis endorsed and applied by *Purdie*.

42 Cal. App. 4 th at 128 n.6.

*Low v. Golden Eagle Ins. Co.*, 2002 Cal. App. Unpub. LEXIS 3202 (Cal. Ct. App. 2002) adopted *Century Transit's* criticism of *Purdie* in a case arising out of an employee's sexual assault on two co-workers.   The policy at issue in *Golden Eagle* excluded from coverage "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." *Id*. at *5.  The *Golden Eagle* policy also excluded

> any claim or to defense costs directly or indirectly, based on, attributed to, arising out of, resulting from or in any manner related to the actual or alleged intentional or negligent violation of any federal, state or local law or statute or common law pertaining to . . . discrimination [or] sexual harassment . . . which results in alleged or actual . . . humiliation, bodily injury, death, sickness, emotional distress, harassment or any other damages allegedly suffered by an employee, a former employee or to the spouse, child, parent, sibling or other relative or dependant of any such employee or former employee. The company shall not have any duty to defend any such claim, proceeding or suit based on, attributed to, arising out of, resulting from or in any manner related to the actual or alleged intentional or negligent violation of any federal, state

15

1   or local law or statute or common law pertaining to . .
2   . discrimination [or] sexual harassment

3   *Id.* at *5-6.  Relying on both the intentional act exclusion and the

4   sexual harassment exclusion, *Golden Eagle* concluded that there was

5   no coverage for the victim's law suit against the employer for,

6   *inter alia*, negligent hiring.   *Golden Eagle* rejected *Purdie*'s

7   reasoning in favor of *Century Transit*:

8          We do not agree with the Purdie analysis. The negligent
       hiring theory in Purdie was merely an alternative theory
9          of liability for the harm done to the plaintiff. We agree
       with the approach in Century Transit. In Century Transit,
10         a taxicab company's insurer refused to defend against an
       action in which an employee attacked and battered two
11         participants in a demonstration. The complaint against
       the employer alleged assault and battery and negligent
12         hiring. The employer argued that the intentional act
       exclusion in the policy did not preclude coverage for the
13         negligent hiring claim. The court disagreed, stating that
       the  exclusion  precluded  coverage  for   assault  and
14         battery, despite multiple legal theories advanced against
       the insured. "Therefore, liability for negligent hiring
15         was wholly dependent upon an injury caused by excluded
       event  and  was  not  a  true  'independent'  cause  of  the
16         plaintiff's injury." Like  the  allegation  in  Century
       Transit, the negligent hiring claim in this case is
17         merely an alternative legal theory and not an independent
       cause of appellants' injuries.
18

19   *Id*. at 11-12.  *Golden Eagle* characterized *Purdie* as an "improper

20   application"  of  *Partridge*  and  commented  that  the  insured's

21   invocation of negligent hiring as a basis for coverage "confus[ed]

22   a  theory  of  liability  (negligent  hiring)  with  a  non-covered

23   occurrence (the act of rape)."  *Id*. at 12 n.5, n.6.

24        The  criticism  of  *Purdie*  advanced  in  *Century  Transit*  and

25   adopted  in  *Golden  Eagle*  appears  to  be  based  on  the  erroneous

26   premise  that  negligent  hiring  is  only  a  theory  of  third-party

27   liability, as opposed to an independent negligent act rendering an

28   employer directly liable.  *See Century Transit*, 42 Cal. App. 4th at

**16**

128 n.6 ("the negligent hiring or retention theory asserted against the employer was not an independent cause of the injury but rather a theory for imposing liability on a third party"); *Golden Eagle*, 2002 Cal. App. Unpub. LEXIS 3202 * 11 ("[t]he negligent hiring theory in Purdie was merely an alternative theory of liability for the harm done to the plaintiff"). *Century Transit* expressed the view that the victim in *Purdie* "was not injured by two independent acts of negligence, but rather only one (i.e., the employee's act in shooting him)." 42 Cal. App. 4th at 128 n.6. Contrary to *Century Transit's* analysis, under the theory of recovery advanced in the *Purdie* victim's law suit, the separate acts of two alleged tortfeasors combined to cause the victim's injuries: the employee committed the intentional tort of assault, while the employer antecedently created an alleged undue risk of harm to persons entering his liquor store by hiring an employee likely to commit an assault.[5] *See, e.g., Flores v. AutoZone West, Inc.*, 161 Cal. App. 4th 373, 381-82 (Cal. Ct. App. 2008) (discussing foreseeability of risk that employee will assault customer or co-worker). Similarly, the allegations involved in *Golden Eagle* implicated two converging torts: the intentional tort of sexual assault committed by the employee, and the alleged negligent creation of an unsafe work environment by the employer. *See Maria D. v. Westec Residential Sec.*, 85 Cal. App. 4th 125, 149-150 (Cal. Ct. App. 2000) (employer is potentially liable to a victim of sexual assault for negligent

---

[5] The risk created by the employer in *Purdie* can be parsed into at least two separate negligent acts: (1) the act of negligently hiring an employee with violent propensities; and (2) the negligent entrustment of a firearm to an employee with violent propensities. The latter risk, which is inherently dependent on an excluded instrumentality, was clearly excluded under the policy at issue in *Purdie*.

hiring, retention, and supervision of employee depending on nature of work environment).

Pursuant to traditional tort law principles, an employer may be held directly liable for the independent negligent act of hiring a dangerous employee based on the rule that "one initiating conduct having an undue tendency to cause harm is liable therefor." *See, e.g., Phillips*, 172 Cal. App. 4th at 1140; *Maria D.*, 85 Cal. App. 4th at 149-150 (employer may be held liable under negligent hiring theory for intentional assault committee by an employee where employer has reason to know that employee, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him); *see also Flores*, 161 Cal. App. 4th at 384-85 (affirming judgment in favor of employer on negligent hiring claim arising out of employee's assault on customer where plaintiff failed to establish breach of applicable duty of care)*; M.P. v. City of Sacramento*, 177 Cal. App. 4th 121, 134 (Cal. Ct. App. 2009) (negligent hiring claim arising out of employee's assault depends on foreseeability of risk under the circumstances of employment).  By failing to acknowledge that negligent hiring may constitute an independent act of negligence sufficient to subject an employer to direct liability, *Century Transit* and *Golden Eagle* confuse the concepts of negligent hiring and vicarious liability.  *See Fernelius*, 22 Cal. 2d at 233 (distinguishing vicarious liability from negligent hiring).  As analysis of potential liability under traditional tort principles is a critical step in the application of California's concurrent cause doctrine, the apparent conflation of negligent hiring with vicarious liability in *Century Transit* and *Golden Eagle* seriously undermines

the criticism of *Purdie* advanced in both cases.

Notwithstanding the criticism of *Purdie* set forth in *Century Transit* and *Golden Eagle,* the results reached in *Century Transit* and *Golden Eagle* are in fact consistent *Purdie's* outcome.   In *Century Transit* and *Golden Eagle,* negligent hiring was a potential concurrent cause of the harm complained of as a matter of tort liability, but in both cases it was impossible for negligent hiring to be a concurrent cause *independent* of risks expressly excluded by the subject policies.

In *Century Transit*, the victims sued their assailant's employer on the theory that the employer knew or should have known that the employee was a violent person with a propensity to cause harm to members of the general public.  *Century Transit*, 42 Cal. App. 4th at 124.  Unlike the policy in *Purdie*, which only excluded a specific type of assault from coverage (assaults involving use of a firearm by an insured or employee of the insured), the policy in Century Transit excluded from coverage *any* claim based on an assault. Pursuant to the victims' theory of recovery in *Century Transit*, the only way the employer's negligent hiring of a person with a propensity for violence could proximately cause the type of harm that befell the victims was for the employee to exercise his violent propensities on members of the public.  In other words, the risk of harm created by the employer's allegedly negligent hiring of a violent employee in *Century Transit* could only materialize through an expressly excluded occurrence. In *Purdie*, however, the risk that the employer's violent employee would exercise his violent tendencies could have materialized in various scenarios that did not involve the excluded instrumentality of a firearm.

**19**

1      The victim's theory of recovery in *Golden Eagle* was also
2  dependent solely on an excluded risk under the policy. The *Golden*
3  *Eagle* policy excluded any claim "arising out of...or in any manner
4  related to...sexual harassment...which results in...bodily injury."
5  2002 Cal. App. Unpub. LEXIS 3202 * 5.   The victims' negligent
6  hiring claim was premised on the theory that the employer
7  negligently employed a person with a propensity for sexual assault;
8  this risk could only materialize through conduct falling within the
9  expansive construction of the term "sexual harassment" adopted by
10  the *Golden Eagle* Court.   *Id*. at * 13.

11      Like *Golden Eagle* and *Century Transit*, the victim's theory of
12  recovery in *Atlas* was also dependent solely on an excluded risk.
13  The victim contended that the employer negligently hired an
14  employee with a propensity to commit theft.   However, that policy
15  excluded "liability arising from any dishonest or criminal act of
16  the insured or their employees or agents;" pursuant to the terms of
17  the subject policy, the employee himself was an excluded
18  instrumentality of injury.   146 Cal. App. 3d at 142.   As the Court
19  of Appeals noted, "no liability can arise from the claimed risk in
20  negligently hiring a thief unless the thief actually steals
21  something."   *Id*. at 148.

22      Although no published opinion has expressly followed *Purdie* to
23  date, *Purdie* has not been overruled and remains persuasive
24  authority.   Based on the current state of the law in California,
25  negligent hiring may constitute an independent concurrent cause
26  sufficient to require coverage for claims arising out of an
27  otherwise excluded occurrence where the risk created by negligent
28  hiring is not inherently dependent on an excluded instrumentality

**20**

of injury or excluded occurrence. *See Purdie*, 145 Cal. App. 3d at 70-71; *see also Partridge*, 10 Cal. 3d at 103 (risk created by filing trigger mechanism on firearm held independent of negligent operation of automobile because risk created by dangerous firearm existed independently of use of automobile). In order to apply the concurrent cause doctrine to a negligent hiring claim, the threshold question is whether negligent hiring could, as a matter of tort liability, subject the employer to liability for the type of harm complained of independently of an excluded occurrence. *See Purdie*, 145 Cal. App. 3d at 70-71.

**4. Negligent Hiring as a Concurrent Independent Cause of the Reyna Accident**

A person injured by someone driving a car in the course of employment may sue the employer for negligently employing a habitually careless driver. *Diaz v. Carcamo*, 51 Cal. 4th 1148, 1159-1160 (Cal. 2011).[6] The Reyna complaint alleges that G & Company was negligent in hiring Pascual because, *inter alia,* Pascual had been convicted of driving under the influence. The Reyna complaint further alleges that G & Company retained Pascual after it was put on notice that Pascual was driving under the influence within the scope of his duties. In essence, the Reyna complaint alleges that G & Company knowingly disregarded the risk of injury that befell Defendants: the risk that Pascual would drive a vehicle within the scope of his job duties while under the influence of alcohol and cause a vehicular accident. Under

---

[6] *Diaz* recognizes that an employer may be liable for negligence independent of its employee where, for example, the employer provides an unsafe vehicle. 51 Cal. 4th at 1160 n.1. Such a claim is alleged in the Reyna Action, however, coverage for the negligent maintenance claim is clearly excluded under the express terms of the Policy.

traditional tort law principles, there is a sufficient nexus between G & Company's alleged negligence in hiring Pascual, the nature of Pascual's duties, and the harm suffered by Defendants for G & Company to be held liable for Defendants' injuries. *See, e.g., id.* Pursuant to the theory of recovery advanced in the Reyna Complaint, G & Company's negligent hiring of Pascual was a concurrent cause of Defendants injuries. Whether coverage exists depends on whether negligent hiring of Pascual was an *independent* concurrent cause. *Compare Atlas*, 146 Cal. App. 3d at 148 (rejecting negligent hiring claim that was dependent on excluded occurrence) *with Purdie*, 145 Cal. App. 3d at 70-71 (negligent hiring held independent concurrent cause where risk created was not dependant on excluded occurrence).

Plaintiff argues that "any alleged negligent hiring would not have been negligent but for the use of the van...no independent act of negligence separate from the use of the van exists." (Motion for Summary Judgment, Doc. 45 at 14). Plaintiff's contention misapprehends the theory of negligent hiring asserted in the Reyna Action. The operative negligent act underlying Defendants' negligent hiring and retention claim in the Reyna Action is the hiring and retaining of a person convicted of driving under the influence to perform job duties which required driving. Under traditional theories of risk and duty underlying the tort of negligent hiring, G & Company's liability is not dependent on use of G & Company's van. Rather, G & Company's liability under the negligent hiring and retention theory advanced in the Reyna Action is based on the foreseeablity of Pascual causing a vehicular accident while driving an automobile under the influence of alcohol

**22**

within the scope of his employment.  This risk is not dependent on use of any instrumentality excluded by the Policy (i.e., automobiles "owned or operated by or rented or loaned to any insured").

As Defendants correctly note, Pascual could have caused a vehicular accident in the course of his duty while driving his own vehicle, an instrumentality that is arguably not excluded under the policy.[7]  Unlike the facts of *Camara*, *Atlas*, *Century Transit*, and *Golden Eagle*, the risk created by G & Company's alleged negligent hiring of Pascual was not indivisibly related to any excluded instrumentality or occurrence.  Because the risk G & Company allegedly created by hiring Pascual could have materialized independently of an excluded occurrence, under the circumstances of this case, G & Company's negligent hiring may constitute an independent concurrent cause of Defendants' injuries.

Plaintiff has not carried the onerous burden of establishing that there is no potential for coverage under the Policy.  *See, e.g., Shanahan*, 193 Cal. App. 4th at 785 (discussing heavy burden insurer must carry).  Summary judgment is DENIED.

**B. Coverage for G & Company, Inc.**

Plaintiff seeks summary judgment that the business entity "G & Company, Inc." is not an insured under the Policy.  Nothing in the language of the Policy suggests that the parties intended for G & Company, Inc., to be a covered entity.  To the contrary, the named parties to the contract are "Hector and Olga Gonzalez DBA G & Company."  There is no opposition to Plaintiff's motion for

---

[7] *See* footnote 3, supra.

23

1  summary judgment on the issue of whether G & Company, Inc. is an

2  insured under the policy.  The named insureds are individuals, who

3  do business under a fictitious name.  This does not create a

4  separate entity or insured.  Plaintiff's motion for summary

5  judgment is GRANTED on this limited issue.

6  **C. Parties in Default**

7      Plaintiff seeks summary judgment that the parties against whom

8  the Clerk of Court has entered defaults will be bound by the

9  court's ruling on Plaintiff's motion for summary judgment.

10  Plaintiff's request is DENIED AS MOOT.

11                              **ORDER**

12      For the reasons stated, IT IS ORDERED:

13      1) Plaintiff's motion for summary judgment is GRANTED with

14         respect to the absence of coverage for G & Company, Inc.;

15      2) The balance of Plaintiff's motion for summary judgment is

16         DENIED; and

17      3) Defendant shall submit a form of order consistent with this

18         memorandum decision within five days of electronic service of

19         this decision.

20  IT IS SO ORDERED.

21  **Dated:    August 19, 2011**              **/s/ Oliver W. Wanger**
                                               UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28