**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MARYLAND CASUALTY COMPANY, a Maryland corporation,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**OLGA GONZALEZ, an individual, HECTOR GONZALEZ, and individual, OLGA AND HECTOR GONZALEZ dba G & CO, G & COMPANY, INC., a California corporation, GABRIEL PASCUAL, an individual, DANIEL REYNA, and individual, KYLE KOETSIER, an individual, EMMERSON VALDIVIESO, an individual,**<br><br>**Defendants.** | **CASE NO. 1:10-CV-2242 AWI JLT**<br><br>**ORDER RE: MOTION FOR RECONSIDEATION** |

## I. History

Plaintiff Maryland Casualty Company ("Plaintiff") issued a commercial general liability policy ("Policy") to Olga and Hector Gonzalez, doing business as G & Co ("Employers").[1] The Policy had an auto exclusion provision which reads "This insurance does not apply to....'Bodily

---

[1] Another entity, G & Company Inc., appears to be a separate business formed by Olga and Hector Gonzalez. It was named as a defendant in this case; the prior Order found that summary judgment in favor of Plaintiff against this defendant was appropriate. Doc. 66, August 19, 2011 Order. How this entity is related to the other parties in this case remains unclear.

injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." Doc. 22, Policy, at 20 of 49. The Employers have a separate auto insurance policy provided by a third party. The Employers were in the business of selling vacuum cleaners directly to consumers by sending sales teams door-to-door. One of the Employers' sales representatives was Gabriel Pascual ("Pascual"), hired in October 2008. On April 27, 2009, Pascual was driving fellow sales representatives Kyle Hoetsier, Daniel Reyna, and Emmerson Valdivieso ("Passengers") in an Employers-owned van, returning to headquarters from a vacuum cleaner sales demonstration. The van was involved in a collision with another automobile. It is alleged that at the time of the accident, Pascual was under the influence of alcohol and driving on a suspended license. It is further alleged that Pascual had a history of driving under the influence.

In Fresno County Superior Court, the Passengers filed suit against the Employers and Pascual, based on claims of negligence, negligent hiring, negligent entrustment, and negligent maintenance. The Employers' auto insurance company is currently providing a defense in that state court case. In this case, Plaintiff filed suit against Employers, Pascual, and Passengers seeking a declaration that it does not have the duty to either indemnify or defend Employers and Pascual based on the auto exclusion provision of the Policy. Doc. 7. Plaintiff moved for summary judgment. Doc. 45. The Passengers opposed the motion. Doc. 50. The hearing on the motion was held on June 6, 2011. On August 19, 2011, Judge Oliver Wanger issued an Order denying summary judgment as to the Employers, Pascual, and the Passengers, while granting the motion as to G & Company, Inc. Doc. 66. Judge Wanger retired from the bench and the case was reassigned. Doc. 70. Plaintiff now moves for reconsideration based on new legal precedent. Doc. 75. The Passengers oppose the motion. Doc. 81. The matter was taken under submission without oral argument.

## II. Legal Standards

"Reconsideration is appropriate if the district court (1) is presented with newly discovered

evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual, circumstances warranting reconsideration." School Dist. No. 1J Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993), citations omitted.

**III. Discussion**

Plaintiff has pointed to two recent opinions (which were issued after oral argument in the underlying summary judgment motion), arguing that they shed new light on the relevant law in this case. In the earlier Order, this court examined the case law concerning concurrent cause doctrine, focusing in particular on four California Appeals Court decisions that dealt with negligent hiring.

The California Supreme Court established the concurrent cause doctrine in State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal. 3d 94 (Cal. 1973). In that case, the insurer issued a homeowner's policy included a comprehensive personal liability provision which excluded "bodily injury...arising out of the...use of...any motor vehicle." State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal. 3d 94, 98 (Cal. 1973). The insured modified the trigger of a gun to increase its sensitivity. The insured carried the gun with him while he was driving his car. The car hit a bump and the gun went off, hitting a passenger. The California Supreme Court found

> the 'use' of Partridge's car was not the sole cause of Vanida's injuries but was only one of two joint causes of the accident. Thus, even if we assume that the connection of the car with the accident is the type of non-ambiguous causal relationship which would normally bring the exclusionary clause into play, the crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). Defendants correctly contend that when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy.
>
> In issuing the homeowner's policy to Partridge, State Farm agreed to protect the insured against liability accruing from non-auto-related risks. The insurer does not deny that Partridge's negligence in filing the trigger mechanism of his gun was a risk covered by the homeowner's policy; thus, if the gun had accidentally fired while the insured was walking down the street or running through the woods, the insurer admits that any resultant damage would clearly be covered by the policy. The insurer contends, nonetheless, that coverage is foreclosed here because the present accident arose out of the use of an automobile.

> In the instant case, however, although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. Under these facts the damages to Vanida are, under the language of the homeowner's coverage clause, 'sums which the Insured...[became] legally obligated to pay' because of the negligent filing of the trigger mechanism; inasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car, we believe the homeowner's policy covers that liability.
>
> A hypothetical may serve to explain further our conclusion in this regard. If, after negligently modifying the gun, Partridge had lent it to a friend who had then driven his own insured car negligently, resulting in the firing of the gun and injuring of a passenger, both Partridge and his friend under traditional joint tortfeasor principles would be liable for the injury. In such circumstances, Partridge's personal liability would surely be covered by his homeowner's policy, and his friend's liability would be covered by automobile insurance. When viewed from this perspective, it can be seen that State Farm is presently attempting to escape liability under the homeowner's policy simply because, in the instant case, both negligent acts happened to have been committed by a single tortfeasor. In our view, this coincidence cannot defeat the insurer's obligation to indemnify the insured for liability arising from non-automobile risks.

State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal. 3d 94, 102-103 (Cal. 1973).

The Second District Court of Appeal dealt with concurrent cause doctrine in the context of negligent hiring in Underwriters Ins. Co. v. Purdie, 145 Cal. App. 3d 57 (Cal. App. 2d Dist. 1983). The insurer issued a multiperil liability policy with an exclusion for "any use maintenance or possession of a fire arm by insured or its agent or employee." Underwriters Ins. Co. v. Purdie, 145 Cal. App. 3d 57, 61 (Cal. App. 2d Dist. 1983). The insured knowingly hired a store clerk with some kind of violent history. While acting in the scope of his employment, that employee got into an argument and shot a supplier. The Second District Court of Appeal concluded:

> the dispositive issue is whether the events giving rise to the insured's liability are exclusively related to the use and operation of the excluded risk.
>
> Appellants correctly contend the liability insurance policy provides coverage for their claimed injuries caused jointly by an insured risk (the insured's negligent hiring of a known violent person) and by an excluded risk (use of a firearm), so long as one of the causes is covered by the policy.
>
> ....
>
> Underwriters contends, nonetheless, that coverage is foreclosed here because the present accident arose out of the use of a firearm. The answer is, of course, the use of the firearm in the instant case, like the use of the automobile in Partridge, was a mere contributing cause. 'That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act.'

> Underwriters relies on decisions which hold the automobile exclusion in the homeowner's policy precludes coverage because the insured's act giving rise to liability was dependent upon and related to insured's use of an automobile and thus, Partridge was not applicable. (See, e.g., State Farm Fire & Cas. Co. v. Camara (1976) 63 Cal.App.3d 48, 53-54; National Indemnity Co. v. Farmers Home Mutual Ins. Co. (1979) 95 Cal.App.3d 102, 108-109; Allstate Insurance Co. v. Jones (1983) 139 Cal.App.3d 271, 278; Safeco Insurance Co. v. Gilstrap (1983) 141 Cal.App.3d 524, 533. However, we find that these cases are distinguishable from the instant case.
>
> The facts in Camara, National Indemnity, Jones, and Gilstrap, were solely and indivisibly related to the use of the excluded instrumentality. In Camara, the automobile was negligently redesigned and rebuilt into a dune buggy. The negligent supervision of the child during her exit from (unloading) the automobile was involved in National Indemnity. Gilstrap involved the negligent entrustment of a motorcycle. Finally, in Jones, the negligence involved the improperly loaded rebar on the truck.
>
> Here, in contrast, the negligent hiring or retention of Antoine is not indivisibly related to the use of a firearm.

Underwriters Ins. Co. v. Purdie, 145 Cal. App. 3d 57, 67 and 70-71 (Cal. App. 2d Dist. 1983). Thus, Purdie suggests that negligent hiring is the sort of tort that is sufficiently unconnected to the use of a firearm or automobile to constitute a concurrent independent cause of injury; exclusion clauses based on those instrumentalities will not defeat insurance coverage for negligent hiring claims.

After Purdie, three California Appellate Court decisions have come to the opposite conclusion regarding negligent hiring/retention as a concurrent independent cause. In the first, the insurer offered a commercial insurance policy with the exclusion that "This policy does not cover the liability of the Insured:...(b) Caused by or resulting from misappropriation, secretion, conversion, infidelity or any dishonest or criminal act on the part of the Insured or other party of interest, his or their employees or agents or any person or persons to whom the property may be entrusted by the Insured." Atlas Assurance Co. v. McCombs Corp., 146 Cal. App. 3d 135, 142 (Cal. App. 3d Dist. 1983). When faced with litigation arising out of employee theft, the court found the exclusion applied:

> Defendants contend plaintiff was required to provide coverage even assuming the applicability of the exclusion for Hartman's theft. They contend their liability in the underlying action was premised on their negligent acts (negligent employment of Hartman and breach of contract through the conversion by Hartman) and not on the theft by Hartman. Since these negligent acts were not excluded from the policy, it is urged, the plaintiff was required to provide coverage. Defendants are wrong.

> ....
>
> until Hartman exercised his alleged propensity as a thief, no liability against McCombs arose. No liability can arise from the claimed risk in negligently hiring a thief unless the thief actually steals something. It is the basing of liability specifically on the negligent hiring of a thief which renders McCombs' alleged negligent act dependent upon the excluded theft as concurrent causes of the loss.

Atlas Assurance Co. v. McCombs Corp., 146 Cal. App. 3d 135, 147-48 (Cal. App. 3d Dist. 1983).

In the second, the insurer offered a general liability policy with the exclusion "No coverage shall apply under this policy for any claim, demand or suit based on assault and battery and assault shall not be deemed an accident, whether or not committed by or at the direction of the insured." Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co., 42 Cal. App. 4th 121, 124 (Cal. App. 2d Dist. 1996). An employee committed an assault while in the course of his employment; the employer had notice of a violent incident earlier that same day but took no action. Crucially, the Second District Court of Appeal rejected its earlier Purdie opinion:

> The assault and battery is clearly the basis for the action against Century; the fact that the claim also includes separate negligent acts by Century cannot avoid the exclusion. Those alleged acts of negligence were based on the assault and battery committed by Silar on the plaintiffs. The exclusion therefore applies and Century cannot rely upon the allegations of negligence to create a potential for coverage.
>
> We summarily reject Century's alternative argument that the negligent hiring of Silar was a concurrent cause of plaintiffs' injuries. Century's contention rests upon the case of Underwriters Ins. Co. v. Purdie (1983) 145 Cal. App. 3d 57, which involved significantly different policy language, ***as well as a misapplication of the concurrent cause doctrine*** discussed by the Supreme Court in State Farm Mut. Auto. Ins. Co. v. Partridge (1973) 10 Cal. 3d 94. In Purdie, the plaintiff was shot by the insured's employee. He was not injured by two independent acts of negligence, but rather only one (i.e., the employee's act in shooting him). As we read Purdie, the negligent hiring or retention theory asserted against the employer was not an independent cause of the injury but rather a theory for imposing liability on a third party for an excluded injury. Unless the employee fired the gun, the injury would not have occurred. Therefore, liability for negligent hiring was wholly dependent upon an injury caused by excluded event and was not a true 'independent' cause of the plaintiff's injury. We agree with those cases which have criticized the concurrent cause analysis endorsed and applied by Purdie.

Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co., 42 Cal. App. 4th 121, 128 n.6 (Cal. App. 2d Dist. 1996), emphasis added.

In the third, the insurer offered a general commercial liability policy with an exclusion for

"sexual harassment...which results in alleged or actual...bodily injury...or any other damages allegedly suffered by an employee." Low v. Golden Eagle Ins. Co., 2002 Cal. App. Unpub. LEXIS 3202, *8 (Cal. App. 1st Dist. Mar. 12, 2002). An employee with a history of sexual misconduct sexually harassed and assaulted co-workers. When the insurer refused to defend the employer, the court concluded:

> We do not agree with the Purdie analysis. The negligent hiring theory in Purdie was merely an alternative theory of liability for the harm done to the plaintiff. We agree with the approach in Century Transit. In Century Transit, a taxicab company's insurer refused to defend against an action in which an employee attacked and battered two participants in a demonstration. The complaint against the employer alleged assault and battery and negligent hiring. The employer argued that the intentional act exclusion in the policy did not preclude coverage for the negligent hiring claim. The court disagreed, stating that the exclusion precluded coverage for assault and battery, despite multiple legal theories advanced against the insured. 'Therefore, liability for negligent hiring was wholly dependent upon an injury caused by excluded event and was not a true "independent" cause of the plaintiff's injury.' Like the allegation in Century Transit, the negligent hiring claim in this case is merely an alternative legal theory and not an independent cause of appellants' injuries.
>
> Purdie improperly applied the holding in State Farm Mut. Auto. Ins. Co. v. Partridge, which involved two independent negligent acts, one of which was unrelated to excluded conduct, and each of which contributed to a covered harm. ([negligent driving on rough road and negligent alteration of gun by filing trigger].) In contrast, when both negligent acts are related to excluded conduct, there is no coverage. (Safeco Ins. Co. v. Gilstrap (1983) 141 Cal. App. 3d 524, 527-528, 190 Cal. Rptr. 425 [negligent entrustment of vehicle to minor son not independent of excluded use of vehicle.] The analysis applied by Purdie has been criticized by a number of cases. (Century Transit)
>
> The policy here does not supply coverage for particular acts of negligence, but for damages arising out of an occurrence. The occurrence at issue here was the rape. It comes within the sexual harassment exclusion. Without the rape, negligent hiring of Haughney resulted in no occurrence for which coverage was provided. The negligent hiring claim depended on, and arose directly from the specifically excluded category of action, and cannot be an independent basis of liability. (Continental Cas. Co. v. City of Richmond). It is merely an alternative theory, not a separate act of negligence that can be disassociated from the excluded sexual harassment itself.

Low v. Golden Eagle Ins. Co., 2002 Cal. App. Unpub. LEXIS 3202, *11-13 n.5 (Cal. App. 1st Dist. Mar. 12, 2002), citations omitted.

The prior Order stated, "Although no published opinion has expressly followed Purdie to date, Purdie has not been overruled and remains persuasive authority." Doc. 66, at 20:22-24. The Order set forth the following rationale for reconciling Purdie with the later cases: "Notwithstanding the criticism of Purdie set forth in Century Transit and Golden Eagle, the results reached in Century Transit and Golden Eagle are in fact consistent [with] Purdie's

outcome. In Century Transit and Golden Eagle, negligent hiring was a potential concurrent cause of the harm complained of as a matter of tort liability, but in both cases it was impossible for negligent hiring to be a concurrent cause *independent* of risks expressly excluded by the subject policies." Doc. 66, Order, at 19:2-9. Specifically, the Order followed Purdie by stating that "The criticism of Purdie advanced in Century Transit and adopted in Golden Eagle appears to be based on the erroneous premise that negligent hiring is only a theory of third-party liability, as opposed to an independent negligent act rendering an employer directly liable." Doc. 66, Order, at 16:24-28.

This method of distinguishing Century Transit and Golden Eagle can be rethought in light of the recent California Supreme Court decision of Diaz v. Carcamo, 51 Cal. 4th 1148 (Cal. 2011). Diaz does not deal with concurrent cause doctrine but has language that touches upon the relationship between negligent hiring and vicarious liability: "No matter how negligent an employer was in entrusting a vehicle to an employee, however, it is only if the employee then drove negligently that the employer can be liable for negligent entrustment, hiring, or retention." Diaz v. Carcamo, 51 Cal. 4th 1148, 1159 (Cal. 2011). The prior Order acknowledged that the basis for following Purdie was tenuous given the fact that no court case had followed Purdie on the relevant point while some had criticized it. The latest California Supreme Court decision does not address the issue, but is occasion for the court to pause and reexamine Purdie with a skeptical eye.

On balance, this court must conclude that Purdie's reasoning with respect to negligent hiring and concurrent cause doctrine is not convincing. In light of Diaz, the analysis contained in Century Transit and Golden Eagle is more persuasive and sets clearer, more straightforward rules to govern the parties in the insurance context. Golden Eagle sets out a good guide for what should and should not be excluded: "Purdie improperly applied the holding in State Farm Mut. Auto. Ins. Co. v. Partridge, which involved two independent negligent acts, one of which was unrelated to excluded conduct, and each of which contributed to a covered harm. ([negligent driving on rough road and negligent alteration of gun by filing trigger].) In contrast, when both negligent acts are related to excluded conduct, there is no coverage. (Safeco Ins. Co. v. Gilstrap

(1983) 141 Cal. App. 3d 524, 527-528, 190 Cal. Rptr. 425 [negligent entrustment of vehicle to minor son not independent of excluded use of vehicle.]" Low v. Golden Eagle Ins. Co., 2002 Cal. App. Unpub. LEXIS 3202, *12 n.5 (Cal. App. 1st Dist. Mar. 12, 2002), citations omitted. This analysis looks at the plain language of the exclusion. When the second negligent act is related to the excluded conduct, it does not constitute a concurrent independent cause. In Partridge, the second negligent act (modifying a gun in an unsafe manner) was totally unrelated to cars and driving. Conceptually, it was not the kind of risk that the insurance policy language was seeking to exclude. In contrast, hiring an individual with a known history of drunk driving and asking him to drive as part of the job straightforwardly relates to an auto exclusion. Indeed, the accident that resulted in this case appears to be the exact sort of incident the exclusion language was designed to exclude in the first place. A rule that applies the exclusion in a direct manner provides certainty for the parties, which is a critical concern in insurance cases.

This focus on the plain language and a straightforward application of the relevant exclusion comports with the Ninth Circuit case law on concurrent cause doctrine. In a recent Ninth Circuit case (which did not deal with negligent hiring), the relevant exclusion read "shall not be liable for Loss on account of any Claim made against any Insured based upon, arising out of, or attributable to the sale, attempted sale or servicing of commodities, commodity future contracts, or any type of option contract or derivative." Central District of California Case No. 07-CV-1095, Docket No. 81-2, First Amended Complaint, at 38:20-23. The court held that

> The exclusion at issue in this case applies irrespective of the legal theory of recovery asserted against the Insured. See Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co., 42 Cal. App. 4th 121, 49 Cal. Rptr. 2d 567, 571 (Ct. App. 1996). The plain terms of the policy exclude coverage for any loss attributable to an investment in derivatives. The fact that the Insured allegedly made intentional misrepresentations of fact or breached a fiduciary duty sets up the purchase of collateralized mortgage bonds. The measure of damages for each and every claim is loss based upon the purchase and sale of derivatives; therefore, these claims directly arise from a category of claims arising from a loss specifically excluded from coverage.

Illinois Union Ins. Co. v. Brookstreet Secs. Corp., 2011 U.S. App. LEXIS 14877, *3 (9th Cir.

July 20, 2011).[2] This recent opinion's focus on the nature of the injuries echoes an earlier Ninth Circuit case which similarly declined to find concurrent independent causation given the facts of the case: "the heirs' claims for both wrongful death and civil rights violations directly arose from categories of injuries [bodily injury...death of any person] specifically excluded under the policy." Continental Casualty Co. v. Richmond, 763 F.2d 1076, 1082 (9th Cir. 1985). These cases focused on the nature of the exclusion and applied it straightforwardly.

Partridge can be understood to have found concurrent independent causation because the injury in that case was a gunshot wound which does not fit within the basic purpose of an auto exclusion. In this case, the injuries suffered are from an auto accident in which an employee was driving; they clearly fall under the relevant exclusion. Negligent hiring does not constitute a concurrent independent cause in this case. Pascual was driving an Employers-owned vehicle at the time of the accident. Thus, the incident falls under the auto exclusion provision of the Policy.

## IV. Order

Plaintiff Maryland Casualty's motion for reconsideration is GRANTED. Summary judgment is GRANTED to Maryland Casualty as to all Defendants. Maryland Casualty is directed to file a proposed order of judgment.

IT IS SO ORDERED.

Dated: January 10, 2012

CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Defendants object to reliance on Illinois Union, on the basis that it "is an unpublished opinion and thus cannot serve as precedent unless it is relevant under the doctrine of law of the case or rules of issue/claim preclusion. U.S. Ct. of App. 9th Cir. Rule 36-3(a)." Doc. 81, Opposition, at 11:23-26. While it is not binding precedent, the opinion is still valuable as persuasive authority.